UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | | |
|---|---|---|
| GREG COTTRELL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 4:18-cv-00200-RLY-DML |
| | ) | |
| CLARK COUNTY SHERIFF'S | ) | |
| DEPARTMENT, | ) | |
| JAMEY NOEL, | ) | |
| BRAD JONES, | ) | |
| MIKE HAMMOND, | ) | |
| BENJAMIN DOOLEY, | ) | |
| ATHENA KRAMER, and | ) | |
| ADAM FRENCH, | ) | |
| | ) | |
| Defendants. | ) | |

**ENTRY ON DEFENDANT ADAM FRENCH'S MOTION TO DISMISS**

Defendant Adam French, M.D., is a member of the medical department of the Clark County Jail. Plaintiff Greg Cottrell alleges that, while he was a pretrial detainee at the Jail, Dr. French was deliberately indifferent to his serious medical need, resulting in permanent damage to his right shoulder. In addition to Plaintiff's Eighth Amendment deliberate indifference claim, he alleges Dr. French was negligent and seeks declaratory relief on both his Eighth Amendment and state law negligence claims. Dr. French now moves to dismiss the claims asserted against him. For the reasons set forth below, Dr. French's motion is **GRANTED in part** and **DENIED in part**.

I. **Background**

On November 1, 2016, officers with the Clark County Sheriff's Department went

1

to Cottrell's home to issue an arrest warrant. (Filing No. 1, Compl. ¶ 14). Cottrell was in the attic with the door closed. (*Id.* ¶ 15). In an effort to apprehend him, the officers released a K-9 which locked into his right upper arm. (*Id.* ¶ 21). In an attempt to free himself, Cottrell fell through the ceiling. (*Id.* ¶ 24). He was transported to the Clark Memorial Hospital Emergency Room where he was diagnosed with a "Biceps Tendon Rupture, Right Puncture Wound, RUE Cervical Strain, initial encounter Closed Head Injury, initial encounter Abdominal Pain Dog Bite." (Filing No. 27-1[1] at ecf p. 1). He received stitches and was prescribed Motrin and the antibiotic Augmentin. (*Id.* at ecf p. 1). The Exitcare Patient Information sheet advised Cottrell to follow-up with Dr. Brent Waltz of Orthopedic Surgeons, PSC, for the bicep tendon disruption. He was also advised to put Neosporin on the wound twice a day, have the sutures removed in 7-10 days, and to see Dr. David White (internal medicine) within 10-14 days. (*Id.* at ecf p. 2).

At the time Cottrell was booked into the Jail on November 1, 2016, jail nurse Benjamin Dooley noted in the medical record:

> PT seen by medical in booking via CO tx. Pt arrived from hospital rt police K9 bite to R upper arm. There are multiple lacerations and stichs [sic] to arm. Officer stated that there was an Xray and MRI done, showing possible ligment [sic] damage but no fractures. Pt c/o pain. CMH sent scripts for Advil and Augmentin. Will start meds as ordered. Nothing further at this time.

(Compl. ¶ 29; Filing No. 29-1 at ecf p. 3). On November 2, 2016, medical department employee Mike Hammond dictated a medical note stating:

> Inmate held in H-10, Laying on bunk on right arm, bicep area traumatised [sic], Patient seen at hospital last Noc, DX of Biceps Tendon Disruption,

---

[1] Filing No. 27-1 consists of medical records which are either quoted or referenced in Cottrell's Complaint.

2

> With Abdominal Pain, Cervical Strain and Sprain (Whiplash). Inmate covered with blood on his back and arm due to bleeding from the traumatised [sic] area on bicep. All areas cleaned and dried, will apply antibiotic oint [sic] later today. Inmate sat on Augmentin, and Advil protocol, nothing further at this time.

(Compl. ¶ 29; Filing No. 29-1 at ecf p. 3).

Over the course of his incarceration, Cottrell alleges he made numerous requests seeking treatment and care for his arm wound. (Compl. ¶ 44).

On November 23, 2016, Cottrell was seen by Dr. French who dictated:

> Pt. states has issue on right upper arm, has open wound on upper right arm,[2] had a dog bite to upper right arm, now has large swollen area to right upper arm, the two bite wounds appear to be healing well, no purulent discharge, will get u/s [ultrasound] to eval for possible abscess evaluation.

(Compl. ¶ 36). On December 9, 2016, Defendant French again saw Cottrell and dictated the following in all capital letters:

> PT COMPLAINS OF RIGHT UPPER ARM SWELLING AND MUSCLE DEFECT AND STATES THAT HE HAS NO STRENGTH IN HIS UPPER RIGHT ARM, OCCURRED FROM A DOG BITE
>
> EXAM REVEALS MUSCULAR DEFECT OF RIGHT UPPER EXTREMITY WITH REDNESS AND INDURATION
>
> WILL REFER TO ORTHO FOR FURTHER EVALUATION

(Compl. ¶ 40; Filing No. 27-1 at ecf p. 4). The ultrasound showed the presence of an abscess and more antibiotics[3] were ordered. (Compl. ¶ 39).

---

[2] The open wound is apparently where the stitches had fallen out. (Compl. ¶ 34).
[3] According to the Complaint, Cottrell missed 10 doses of the antibiotic prescribed by the ER doctor. (Compl. ¶ 37; *see also* Filing No. 27-1 at ecf p. 4).

3

On December 16, 2016, a member of the jail staff contacted Orthopedic Surgeons to set up an appointment. (Filing No. 27-1 at ecf. p. 5). The note from that conversation states, "It was suggested that we get an x-ray first to see if bone damage was present, and if there is, she [sic] could make an appointment then." (*Id.*; Compl. ¶ 41). On December 22, 2016, jail nurse Athena Kramer stated, "X ray results show no fractures or dislocation noted at this time along with no foreign bodies. Result will now be faxed to jail doctors for review and tx plan." (Compl. ¶ 42, Filing No. 29-1 at ecf p. 5). The next entry dated December 28, 2016 stated: "Doctor French signed off on x-ray, due to no bone damage, apt not needed for ortho surgeons." (Compl. ¶ 43; Filing No. 29-1 at ecf p. 5).

On February 24, 2017, Cottrell was taken to Kleinert, Kutz and Associates where he was diagnosed with right deltoid rupture, right shoulder adhesive capsulitis and right cub TC. (Compl. ¶ 45; Filing No. 29-1 at ecf p. 11). Because of the length of time that elapsed between the date of injury and the appointment, it was determined that the damage to the muscle and nerves was permanent. (Compl. ¶ 46). His arm is now deformed. (*Id.* ¶ 50). As a result of the injury, Cottrell can no longer perform his job as a diesel mechanic. (*Id.* ¶ 52).

**II.   Legal Standard**

"A pleader's responsibility is to state a claim for relief that is plausible on its face." *Huri v. Office of the Chief Judge of the Circuit Court of Cook Cnty.*, 804 F.3d 826, 832-33 (7th Cir. 2015) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)). When reviewing a motion to dismiss, the court accepts all facts alleged in the complaint as true and draws all reasonable inferences from those facts

in favor of the plaintiff. *Smith v. Dart*, 803 F.3d 304, 309 (7th Cir. 2015). With this standard in mind, the court turns to the merits of his claims.

## III. Discussion

### A. Negligence

In Count XIV, Cottrell alleges that the care he received from Dr. French fell below the standard of care. Cottrell concedes his state law negligence claim against Dr. French is covered by Indiana's Medical Malpractice Act. Moreover, this claim has not been submitted to a medical review panel for an opinion. Therefore, he does not oppose the dismissal of those claims at this time. *Estate of Rice ex rel. Rice v. Corr. Med. Servs.*, 596 F. Supp. 2d 1208, 1225 (N.D. Ind. 2009) (dismissing without prejudice a state law negligence claim because the plaintiff had not fully complied with the Indiana Medical Malpractice Act). Accordingly, Dr. French's motion to dismiss Count XIV (negligence) is **GRANTED**.

### B. Section 1983 Deliberate Indifference

In Count VII, Cottrell alleges the medical care he received from Dr. French was so substandard that it was tantamount to a violation of his Eighth Amendment right to be free from cruel and unusual punishment. In medical care cases, the Eighth Amendment's proscription against cruel and unusual punishment requires prison officials to provide adequate medical care. *Minix v. Canarecci*, 597 F.3d 824, 831 (7th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 832 (7th Cir. 2010)). The Eighth Amendment applies not only to convicted prisoners, but also to pretrial detainees like Cottrell, by virtue of the Fourteenth Amendment's due process clause. *Id.*

To state a claim for inadequate medical care, a plaintiff must first allege: (1) his condition was objectively serious; and (2) the defendant was deliberately indifferent to his health or safety. *Orlowski v. Milwaukee Cty.*, 872 F.3d 417, 423 (7th Cir. 2017). A medical condition is sufficiently serious if it "has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would perceive the need for a doctor's attention." *Gayton v. McCoy*, 593 F.3d 610, 620 (7th Cir. 2010) (internal quotation marks and citation omitted). "A medical condition need not be life threatening to be serious; rather, it could be a condition that would result in further significant injury or unnecessary and wanton infliction of pain if not treated." *Id.*

Contrary to Dr. French's argument, Cottrell has alleged sufficient facts to establish he suffered from an objectively serious medical condition. Cottrell was not just bitten by a K-9; the Complaint alleges the K-9 "locked onto his arm." He was taken to ER where he was diagnosed with a bicep tendon rupture and was ordered to follow up with an orthopedic doctor. By the time he saw Dr. French, he had an open wound where his stitches had come out and his arm was swollen from infection. If left untreated, his condition was of the kind that could (and allegedly did) result in significant and permanent injury. *Gayton*, 593 F.3d at 620.

The deliberate indifference inquiry has two components. The defendant must have subjective knowledge of the risk to the inmate's health but acted or failed to act despite that knowledge. *Farmer*, 511 U.S. at 842. Whether a defendant had knowledge is typically a question of fact: "a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Id.*

6

Dr. French maintains he evaluated Cottrell on two different occasions and considered, but later determined, that a referral to a specialist was not necessary. Consequently, at most, he argues, he committed malpractice. *Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir. 2011) (deliberate indifference "is more than negligence" and "is not medical malpractice")). The allegations of Cottrell's Complaint could reasonably be seen in that light; Dr. French *should have* done more to investigate Cottrell's injury and he *should have* followed up with Orthopedic Surgeons despite the results of Cottrell's x-ray showing no bone damage. *Johnson v. Doughty*, 433 F.3d. 1001, 1013 (7th Cir. 2006).

On the other hand, to prevail, Cottrell is not required to allege he received *no* medical treatment. *Berry v. Peterman*, 604 F.3d 435, 441 (7th Cir. 2010) ("[A] prisoner also is not required to show that he was literally ignored."). An easier course of treatment which a medical professional knows is ineffective can support a claim of deliberate indifference. *Id.* (citing *Estelle v. Gamble*, 429 U.S. 97, 104 & n.10 (1976)). So too can a significant delay in effective medical treatment, "especially where the result is prolonged and unnecessary pain." *Id.* (citing *Grieveson v. Anderson*, 538 F.3d 763, 779 (7th Cir. 2008)).

Here, Cottrell presented with a serious medical condition and made numerous medical requests for treatment over the course of his incarceration. As Cottrell's treating physician in the Jail, Dr. French knew of his injury and knew it was not healing properly. Cottrell developed an open wound where his stitches fell out and later complained of "large swelling" in the affected area, which was later determined to be an abscess. He also complained of "muscle defect and [] no strength in his upper right arm." Although

7

he recommended Cottrell be referred to Orthopedic Surgeons for an evaluation, he later recalled that order because there was no evidence of *bone* damage. Cottrell's injury was to his bicep tendon and shoulder, not his bone. Therefore, the fact that he did not have a dislocation or fracture could be interpreted as an excuse to deny him adequate medical treatment. Furthermore, Cottrell was not taken to a specialist for another two months. Viewed in the light most favorable to Cottrell, this delay unnecessarily prolonged his treatment (and pain), the result of which was permanent injury to his shoulder, nerve damage, and disfigurement. *Berry*, 604 F.3d at 441 (citing *Grievson*, 538 F.3d at 779). Accordingly, Dr. French's motion to dismiss Count VII (deliberate indifference) is **DENIED**.

### C. Declaratory Relief

In Count XV, Cottrell asks the court to declare that Dr. French was negligent in the care he provided him and to declare that Dr. French violated his Eighth Amendment right to be free from cruel and unusual punishment by failing to provide him reasonable and timely medical care for his serious medical condition. These claims are duplicative of Counts VII and XIV. Accordingly, for the reasons just explained, Dr. French's motion to dismiss Count XV is **GRANTED in part** (negligence) and **DENIED in part** (deliberate indifference).

## IV. Conclusion

The court finds Dr. French's Motion to Dismiss (Filing No. 23) should be **GRANTED in part** and **DENIED in part**. It is **GRANTED** with respect to Counts XIV (negligence) and Count XV (declaratory relief/negligence); and **DENIED** with respect to

Count VII (deliberate indifference) and Count XV (declaratory relief/deliberate indifference).

**SO ORDERED** this 6th day of August 2019.

_____
RICHARD L. YOUNG, JUDGE
United States District Court
Southern District of Indiana

Distributed Electronically to Registered Counsel of Record.